# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| TODD W. WHITE, ET AL. | CIVIL ACTION NO. 08-1491 |
|---|---|
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| GREAT WEST CASUALTY CO., ET AL. | MAGISTRATE JUDGE HAYES |

## MEMORANDUM ORDER

Before the Court is a Motion to Exclude Testimony of Charles E. Bain (Record Document 10) filed by the plaintiffs, Todd and Ginger White ("the Whites"). The plaintiffs contend that Charles E. Bain ("Dr. Bain") should not be permitted to offer expert testimony in this case because he possesses no scientific, technical or other specialized knowledge which will assist the trier of fact to understand the evidence or to determine a fact in issue. See id. The defendants, Great West Casualty Co. ("Great West"), Marten Transport Ltd. ("Marten Transport"), and Daniel J. Embree ("Embree"), opposed the Motion to Exclude. See Record Document 11. For the reasons which follow, the Motion to Exclude Testimony of Dr. Bain is **DENIED**.

**Background**

This is an action for money damages as a result of a June 1, 2007 vehicular accident between the Whites and Embree, who was working for Marten Transport, whose vehicle was insured by Great West. See Record Document 13, ¶ A. At this stage of the litigation, contested issues include fault, comparative fault, causation, the extent of Todd White's physical injuries, damages, and mitigation of damages. See id., ¶¶ E & F.

Dr. Bain was hired by the defendants and submitted reports dated November 10, 2008 and March 27, 2009. See Record Document 10, Exhibits 4 7 5. Dr. Bain conducted

an injury causation analysis ("ICA")[1] to determine whether Todd White's injuries were caused by the June 2007 vehicular accident. He also submitted a sworn affidavit and reply expert report in conjunction with the pending motion to exclude. See Record Document 11, Exhibit 1. The purpose of the affidavit was to explain the foundations for his opinions, the basis of which are grounded in the scientific process of ICA. See id. After his analysis, Dr. Bain concluded, and will testify at trial, that it is his expert opinion that Todd White's spinal injuries could not have been caused by the forces generated in the June 2007 vehicular accident.

The Whites challenge the expert opinion of Dr. Bain on the grounds that he is not qualified to testify regarding causation of Todd White's injuries and because his opinions are unreliable. See Record Document 10-2. Specific points of contention include: Dr. Bain is not a neurosurgeon or an orthopedic surgeon; he never met or examined Todd White; every treating physician who examined Todd White in connection with this accident opined that the accident was the catalyst for his lumbar injury; and other experts disagree with Dr. Bain's methodology. See id. at 3, 4, 6. The Whites also argue that Dr. Bain ignored the testimony of Todd White regarding his movements as a result of the impact of the accident, ignored the extent of the physical damage caused by the impact of the accident, and never went to the site or examined the vehicles, but instead looked at pictures and read deposition excerpts. See id. at 8, 9. They maintain that such methodology is scientifically illogical and will unfairly impact and be unhelpful to the jury.

---

[1] The process of ICA is the examination of a collision or other potentially harmful event in order to understand its nature and to determine its essential features, including the causation of injuries. See Record Document 10, Exhibit 4. The primary goal of ICA is prediction and prevention of injuries, but it can be and is used to explain the relationship between the physical characteristics of an event and the probability of, and severity of, injury as claims by the plaintiff and his treating physician. See id.

See id. at 9, 10.

**Dr. Bain's Qualifications and Summary of his Opinions**

In his initial expert report, Dr. Bain first discusses Todd White's medical history and then makes certain findings, including:

> Based on the images, it was reasonable to conclude that the impact to the Freightliner's trailer was caused by an object moving in a front to rear orientation. Based on the damage to the car-hauling trailer, the contact occurred in a front to rear direction. Based on the layout of the truck stop and Mr. White's statements, the only possible scenario was that the Freightliner was parked on the south side of the truck stop and the Ford was traveling against traffic in a westbound direction. The speed of the Ford was greater than the speed of the tractor-trailer. Time and distance calculations were performed with the speed of the Ford being varied between 5 and 15 miles per hour and the speed of the Freightliner being varied between 2 and 5 mph. Based on Mr. White's statement as to where he was in the travel lane, it was reasonable to conclude that in all scenarios Mr. White had ample opportunity to visualize the rearward movement of the tractor-trailer prior to reaching the rear of the Freightliner's trailer.
>
> Accident reconstruction (EDSMAC 4) was utilized to investigate various impact scenarios based on the vehicle damage, the truck stop layout and statements made by Mr. White. Simulations were performed with the Freightliner speed varied between 3 and 5 miles per hour. The speed of the Ford was varied between 5 and 15 miles per hour. Based on the layout of the truck stop and the damage to the vehicles, the angle between the two vehicles was set at -135 degrees. Based on the above information and the results of the scenarios, it was reasonable to conclude that the speed of the Freightliner was no more than 5 mph. In the likely scenarios, the peak accelerations of the Ford were less than 0.6 G with a principal direction of force from approximately 11 o'clock.
>
> If the Ford was subjected to an acceleration as great as 0.6 G, Mr. White would have experienced impact-related motion during the collision that would have consisted of his head, neck and torso moving in a very slightly forward and leftward direction. Mr. White would not have contacted the vehicle's interior surfaces because of the friction forces between his torso and the vehicle's seat, and possible bracing action of his arms and legs. Mr. White would not have engaged his seat belt. The accelerations that Mr. White would have been subjected to would have been no greater than those experienced with maximal vehicle braking.
>
> Human subject frontal impact testing, involving considerably higher accelerations than Mr. White was exposed to, did not cause serious or

long-lasting injury. . . . In this case, Mr. White was subjected to forces and accelerations that were biomechanically trivial, that had no potential for injury and that were well within levels he would be subjected to on a daily basis.

. . .

Mr. White had a long history of low back pain and his symptoms and signs before and after this event were unchanged. This event did not aggravate, exacerbate or make symptomatic Mr. White's longstanding DDD [degenerative disc disease] and spondylosis.

In summary, the impact between those two vehicles was the result of Mr. White's actions and inattentive behavior. Any forces and accelerations that Mr. White was subjected to were biomechanically trivial and had no injury potential. Not only was there no causal relationship between Mr. White's DDD and the subject event, there was not even a temporal relationship.

Record Document 10, Exhibit 4.

**Law and Analysis**

Federal Rule of Evidence 702 establishes the standards for determining whether expert testimony is admissible to assist the fact finder to understand the evidence. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert, the Supreme Court instructed trial courts to act as gatekeepers for admissible expert testimony and provided an illustrative list of factors that courts may use when evaluating the reliability of such testimony. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 579, 592-94, 113 S.Ct. 2786, 2796-97 (1993). These factors include whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards

controlling its operation, and whether it is generally accepted in the relevant scientific community. See id. at 593-94, 113 S.Ct. at 2796-9786. "In short, expert testimony is admissible only if it is both relevant and reliable." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir. 2002). Thus, the Daubert factors should be applied with flexibility and the question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 138, 119 S.Ct. 1167, 1170 (1999); Burleson v. Tex. Dep't of Criminal Justice, 393 F.3d 577, 584 (5th Cir. 2004).

Upon consideration of the record, the Court is satisfied that Dr. Bain is qualified as an expert by "knowledge, skill, experience, training, or education" as required by Rule 702. He earned a Doctor of Medicine from Queen's University in Canada and is licensed to practice medicine in both Canada and Texas. See Record Document 10, Exhibit 6. He has nineteen years of experience in family and emergency medicine. See id. His medical education includes specific academic and clinical instruction in neurology, orthopedics, neurological surgery, and radiology. See id. His education, training, and experience in emergency medicine also includes the recognition, correct diagnosis, accurate investigation, and initial treatment of all forms of trauma, including orthopedic and neurological trauma. See id. The Whites' concerns that Dr. Bain is not a neurosurgeon or an orthopedic surgeon do not go to admissibility, but rather credibility and are appropriate subject matter for cross-examination. With respect to ICA, Dr. Bain has an undergraduate degree in engineering and completed a course at Northwestern University in 2003 concerning traffic accident reconstruction. See id. Under these circumstances, Dr. Bain possesses sufficient training and experience to qualify as a medical expert, who may opine as to his ICA, in this case.

The Court also finds that Dr. Bain's expert opinions appear sufficiently reliable. In

reaching his opinions, he reviewed accident reports, images of the vehicles and accident scene, repair estimates, various pleadings, depositions, and medical records. See id., Exhibit 4. He then utilized a computer software program that appears to be widely used in the United States to investigate various impact scenarios and to reach his ultimate conclusions. See id. The record evidence indicates that the theories and methods he employed are generally accepted in the medical community. He applied these medical theories to the facts of the case, which will assist the jury in determining the cause of Todd White's injuries. Again, the Whites' concerns regarding Dr. Bain's failure to examine Todd White, his consideration of Todd White's deposition testimony, and his failure to personally visit the accident site go to the weight, rather than admissibility, of Dr. Bain's expert opinions. The Court is persuaded that Dr. Bain's methodology and principles are scientifically sound and based on facts sufficient to satisfy Rule 702's reliability requirement.

**Conclusion**

Based on the foregoing, the Motion to Exclude Testimony of Dr. Bain (Record Document 10) filed by the Whites be and is hereby **DENIED**.

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 25th day of August, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE